UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE NO: 6:23-cv-2456

ARTHUR J. TOMPKINS, JR.

    Plaintiff,

vs.

TRANSUNION, LLC,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Arthur J. Tompkins, Jr. ("Tompkins"), by and through undersigned counsel, and for his complaint against the Defendants, alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for actual, statutory and actual damages, costs and attorney's fees brought pursuant to 15 U.S.C. § 1681 *et seq*. (Federal Fair Credit Reporting Act "FCRA"), and Fla. Stat. §559.55, *et seq.* (Florida Consumer Collection Practices Act "FCCPA").

2. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p) and 28 U.S.C. 1367. Venue in this District is proper because Plaintiff resides here and applied for credit in this District.

### PARTIES

3. Plaintiff, Tomkins, is a natural person and resident of Volusia County, Florida. He is a "consumer" as defined by 15 U.S.C. §1681a(c) and Fla. Stat. §559.55(8).

4. Transunion, L.L.C ("Transunion") is a limited liability company under the laws of the State of Delaware authorized to do business in the State of Florida.

5. Transunion is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Upon information and belief, Transunion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

6. Transunion disburses such consumer reports to third parties under contract for monetary compensation.

## FACTUAL ALLEGATIONS

7. On or about November 6, 2022, Tompkins brought his pet dog, Rookie, to Oviedo Veterinary Care and Emergency ("Oviedo") because he was in distress, specifically, pain and discomfort in Rookie's abdomen, vomiting, and lethargy.

8. Oviedo diagnosed Rookie with Necrotizing Pancreatitis and hospitalized Rookie for three (3) days. Rookie was then sent home with medication due to an impending hurricane.

9. Because Rookie's condition worsened, Plaintiff returned Rookie to Oviedo on November 12, 2022.

10. Oviedo did not perform surgery on Rookie until November 19, 2022, almost two (2) weeks after the dog was initially brought in.

11. At the suggestion of Oviedo's staff and with their assistance, Tompkins applied for and received a Synchrony Bank CareCredit account.

12. After initially paying Oviedo more than $4000, Oviedo demanded an additional $9140 to care for and perform surgery on Rookie.

13. When he was unable to obtain additional financing from Synchrony Bank, Plaintiff applied for and obtained multiple loans from Scratch Financial.

14. During the time that Rookie was in the care of Oviedo and after having received approximately $13,300 from Tompkins, his condition had worsened and he was in utter distress. After surgery, which was performed on November 19, 2022, thirteen (13) days after Rookie was diagnosed with Necrotizing Pancreatitis, Oviedo informed Tompkins that Rookie would not survive long and needed to be euthanized.

15. By the time Oviedo finally performed surgery, too much time had elapsed and Rookie's pancreas had necrotized to the size of a coin. Euthanasia was the only humane option.

16. At the time, the Synchrony Bank Carecredit card and Scratch Financial were the only credit options offered at Oviedo. Because Oviedo would not even see Rookie without a payment of $4002.92 being paid, Tompkins was, in essence, forced under duress to apply for the Synchrony Bank Carecredit account, regardless of the rates and terms of the account and without the benefit of the Truth in Lending Act ("TILA") or other federally required disclosures.

17. Because of the exceptionally poor care provided to Rookie by Oviedo, Plaintiff should be relieved from the amounts paid or owed to Synchrony Bank and Scratch Financial due to the defective nature of the veterinary services at the time of purchase.

18. Pursuant to Fla. Stat. §516.31(2), "[a] holder or assignee of any negotiable instrument or installment contract, … which originated from the purchase of certain consumer goods or services is subject to all claims and defenses of the consumer debtor against the seller of those consumer goods or services."

19. Synchrony Bank financed the purchase of the defective veterinary services, paid Oviedo $3500.00, and sent monthly statements to the Plaintiff.

20. Scratch Financial financed the purchase of the defective veterinary services, paid Oviedo $9089, and sent monthly statements and text messages to the Plaintiff.

21. Synchrony Bank is liable for the acts of Oviedo. Law Office of David J. Stern, P.A. v. Security Nat'l. Servicing Co., 969 So.2d 962, 968 (Fla. 2007).

22. Scratch Financial is liable for the acts of Oviedo. Law Office of David J. Stern, P.A. v. Security Nat'l. Servicing Co., 969 So.2d 962, 968 (Fla. 2007).

23. Synchrony Bank received the dispute and accompanying documents from Equifax, Experian, and Transunion and then erroneously verified that the account was valid. The dispute included an expert opinion from a veterinarian who determined that Oviedo's staff failed to adhere to the standard of care required of veterinary physicians in Rookie's circumstances.

24. Scratch Financial received the dispute and accompanying documents from Equifax, Experian, and Transunion and then erroneously verified that the accounts were valid. The dispute included an expert opinion from a veterinarian who determined that Oviedo's staff failed to adhere to the standard of care required of veterinary physicians in Rookie's circumstances.

25. After Plaintiff requested verification and correction of the erroneous account information, Equifax, Experian, and Transunion failed to evaluate or consider any of the specific information, claims and evidence provided by Plaintiff. Additionally, they did not make any attempt to independently or reasonably verify Wells Fargo's representations.

26. As a result of the erroneous derogatory information, Plaintiff has suffered significant damages: a significant drop in his credit score, the inability to obtain credit, and the

aggravation of dealing with Defendants' failure to meaningfully evaluate Plaintiff's dispute.

**COUNT I AS TO TRANSUNION'S VIOLATION OF 15 U.S.C. §1681e(b)**

27. Plaintiff realleges and incorporate paragraphs 1 through 3, 10 through 12, 19 through 30, 37, and 38 above as if fully set out herein.

28. Transunion violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

29. As a result of this conduct, action and inaction of Transunion, Plaintiff suffered damages by loss of credit, loss of the ability to purchase and benefit from a credit, specifically being denied for a loan, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

30. Transunion's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. 1681o.

31. Plaintiff is entitled to recover costs and attorney's fees from Transunion in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n, §1681o, or both.

WHEREFORE, Plaintiff demands judgment be entered in her favor and against Transunion for the following:

      a) Actual damages in an amount to be proved at trial;

      b) Punitive damages as provided for in 15 U.S.C. §1681n(a)(2);

      c) Statutory damages as provided for in 15 U.S.C. §1681n(a)(2);

  d) Costs and attorney's fees as provided for in §1681n(a)(3) and 15 U.S.C. §1681n(a)(2); and

  e) Such other and further relief as this Court deems just and proper.

## COUNT II AS TO TRANSUNION'S VIOLATION OF 15 U.S.C. §1681i

32. Plaintiff realleges and incorporate paragraphs 1 through 3, 10 through 12, 19 through 30, 37, and 38 above as if fully set out herein.

33. Transunion violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Synchrony Bank and Scratch Financial; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files; and by relying upon verification from a source it has reason to know is unreliable.

34. As a result of this conduct, action and inaction of Transunion, Plaintiff suffered damages by loss of credit; loss of the ability to purchase and benefit from credit; specifically, being denied for a loan, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

35. Transunion's conduct, action and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

36. Plaintiff is entitled to recover costs and attorney's fees from TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§1681n, 1681o, or both.

WHEREFORE, Plaintiff demands judgment be entered in his favor and against Transunion for the following:

    a) Actual damages in an amount to be proved at trial;

    b) Punitive damages as provided for in 15 U.S.C. §1681n(a)(2);

    c) Statutory damages as provided for in 15 U.S.C. §1681n(a)(2);

    d) Costs and attorney's fees as provided for in §1681n(a)(3) and 15 U.S.C. §1681n(a)(2); and

    e) Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demands trial by jury.

Debt Shield Law
3440 Hollywood Blvd., Suite 415
Hollywood, FL 33021
Tel:   844-279-1112
service@debtshieldlaw.com
joel@debtshieldlaw.com
dayami@debtshieldlaw.com

  /s/ Joel D. Lucoff
Joel D. Lucoff
Fla. Bar No. 192163